**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **ELSIE AKANNO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 4:23-cv-1054-ALM-KPJ** |
| | § | |
| **MEDICAL CITY MCKINNEY,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Columbia North Texas Subsidiary GP, LLC's[1] ("Defendant") Motion to Dismiss Plaintiff's Original Complaint (the "Motion") (Dkt. 4). Plaintiff Elsie Akanno ("Plaintiff") did not file a response. For the reasons that follow, the Court recommends the Motion (Dkt. 4) be **GRANTED**.

## I.    BACKGROUND

On November 29, 2023, Plaintiff, proceeding *pro se*, filed a complaint (the "Complaint") (Dkt. 1) against Defendant pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Dkt. 1 at 1. In the Complaint (Dkt. 1), Plaintiff alleges that she was employed at Medical City McKinney where she experienced discrimination because of her race, color, age, religion, and national origin, resulting in the termination of her employment. *Id.* at 3. Plaintiff further generally alleges that she experienced the following: a hostile work environment; discriminatory treatment and practices; threats and humiliation; derogatory comments regarding

---

[1] Defendant asserts that it has been improperly named in the Complaint (Dkt. 1) as Medical City McKinney and clarifies that its proper name is Columbia North Texas Subsidiary GP, LLC. Dkt. 4 at 1.

nationality, race, and religion; unequal treatment with peers; denial of promotion and opportunity to grow; and failure of the organization to mitigate after a complaint was made. *Id.*

Plaintiff attaches the charge she filed with the Equal Employment Opportunity Commission ("EEOC"), wherein she details the allegedly discriminatory conduct. *Id.* at 6–8. In her EEOC charge, Plaintiff alleges that she worked as a registered nurse for Defendant since March 2012. *Id.* at 7. Plaintiff generally alleges that she had previously reported her supervisor to human resources "as creating a racially hostile work environment" and that she was "warned . . . to watch [her] back due to the racism at the hospital." *Id.* Plaintiff alleges six instances of "hostile treatment" that ultimately resulted in her termination. *Id.* First, Plaintiff alleges that she was sick with Covid-19 at the end of 2021, and that while she was on sick leave, her supervisor, Lesley Hilton ("Ms. Hilton"), "sent inappropriate . . . messages to [her]." *Id.*

Second, Plaintiff alleges that when she returned to work after her sick leave, she was relieved from her duty for the day because she was still experiencing Covid-19 symptoms. *Id.* Plaintiff alleges that after she clocked out, she used her Airpods to speak with her doctor over the phone. *Id.* Plaintiff alleges that "Ms. Hilton approached [her] and told [her] that [she] was not supposed to be wearing [A]irpods." *Id.* Plaintiff alleges that she told Ms. Hilton that she had clocked out, was using the Airpods to speak with her doctor, and would remove the Airpods prior to clocking in again. *Id.* Plaintiff alleges that "[d]espite the circumstances, Ms. Hilton wrote [her] up for a lie; for wearing [A]irpods while servicing patients, which is absurd and not true." *Id.*

Third, Plaintiff alleges that she was put on the schedule without her knowledge. Plaintiff alleges that Ms. Hilton told Plaintiff she "has the tendency to change the schedule and forget to tell [her]." *Id.* Plaintiff alleges that she was called and told she was on the schedule that day, so she "came in right away and clocked in about 30 minutes after the call." *Id.* Plaintiff alleges that

even though she had no idea she was on the schedule, Ms. Hilton "wrote [her] up for a patient safety violation, which was not accurate." *Id.*

Fourth, Plaintiff alleges that prior to her annual review, Ms. Hilton told her that she "would be getting a merit increase"; however, when she met Ms. Hilton for the review, Ms. Hilton told her "just kidding" and "laughed as she reported [Plaintiff] would not be getting anything." *Id.*

Fifth, Plaintiff alleges that she had previously requested the day off for her son's birthday "to memorialize his death and pay respects." *Id.* Plaintiff alleges that "[t]he day off was approved, however, just before that date, [Ms. Hilton] put [her] on the schedule anyway, ignoring [her] request." *Id.* Plaintiff alleges she "was forced to report to work." *Id.*

Sixth, Plaintiff alleges that she was charting on her computer and someone reported her for sleeping at the computer terminal. *Id.* Plaintiff alleges that "[t]he report was false, and [she] urged Ms. Hilton to review the charting that would definitively prove that [she] could not have been sleeping." *Id.* Plaintiff alleges that Ms. Hilton "refused to check" the charting. *Id.* Plaintiff alleges that "the person who falsely reported that [she] was sleeping to Ms. Hilton is a friend of hers." *Id.* at 7–8. Plaintiff alleges that this final incident was the purported reason for her termination. *Id.* Plaintiff alleges that the reason for her termination was originally "sleeping"; however, after Plaintiff told Ms. Hilton that she had not been sleeping, the reason for Plaintiff's termination was changed to "appearance of sleep." *Id.* at 8.

On December 21, 2024, Defendant filed the Motion (Dkt. 4), requesting that the Court (1) dismiss Plaintiff's claims based on national origin, color, and age discrimination for failure to exhaust administrative remedies; and (2) dismiss Plaintiff's claims based on race and religion for failure to state a claim for relief. Dkt. 4 at 1–2. Plaintiff did not file a response.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## III.    ANALYSIS

### A.    Administrative Exhaustion

In the Motion (Dkt. 4), Defendant first argues that Plaintiff's claims of national origin, color, and age discrimination should be dismissed for failure to assert such claims before the EEOC when she filed her EEOC charge. Dkt. 4 at 2.

Before filing a Title VII claim, an employee "must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC." *Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 358 (5th Cir. 2013) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). While exhaustion is not jurisdictional, it "remains, as it always has, an absolute prerequisite to filing suit." *Betts v. Winco Foods, LLC*, No. 19-cv-152, 2020 WL 512294, at *3 (E.D. Tex. Jan. 31, 2020) (citing *Fort Bend County v. Davis*, 587 U.S. 541, 552 (2019)). However, "because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated *pro se*, the scope of an EEOC complaint should be construed liberally." *Pacheco*, 448 F.3d at 788 (italics added) (first quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970); and then citing *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)). As a result, a Title VII claim

> may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.

*Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (quoting *Fellows*, 701 F.2d at 451); *see Anderson v. Venture Express*, 694 F. App'x 243, 247 (5th Cir. 2017) (same). "Courts assess whether a claim is 'like or related' to the underlying EEOC charge through a 'fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and by looking slightly

beyond its four corners, to its substance rather than its label.'" *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 291 (5th Cir. 2020) (cleaned up) (quoting *Pacheco*, 448 F.3d at 789).

Here, in her EEOC charge, Plaintiff identifies race, religion, and sex in the box entitled "Discrimination Based On." Dkt. 1 at 5. Plaintiff does not identify color, national origin, or age in this box. *See id.* In the "Particulars" portion of her EEOC charge, Plaintiff generally asserts that there was a "racially hostile work environment" and that she was "warned . . . to watch [her] back due to the racism at the hospital." *Id.* at 7. Plaintiff then details the alleged actions taken by her supervisor, Ms. Hilton, which in Plaintiff's view were discriminatory and ultimately resulted in her termination. *Id.* While Plaintiff is not required to identify each discriminatory basis on her form, the factual allegations included in her EEOC charge should be reasonably likely to prompt an investigation into these additional bases. However, Plaintiff did not include any facts in her EEOC charge that would expand the scope of the EEOC investigation to include color, national origin, or age as a basis for the alleged discrimination.

As to Plaintiff's claim of color discrimination, although color and race are related forms of discrimination, they are distinct from one another, as emphasized by color and race being separate bases for discrimination under 42 U.S.C. § 2000e-2. *See Donnelly v. Acad. P'ships, LLC*, No. 20-cv-1106, 2021 WL 462052, at *3 (N.D. Tex. Feb. 9, 2021). Courts within the Fifth Circuit that have considered claims of color discrimination have defined it as follows: "Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Id.* (cleaned up) (quoting *Taylor v. Tex. S. Univ.*, No. 12-cv-1975, 2013 WL 5410073, at *8 (S.D. Tex. Sept. 25, 2013), *aff'd*, 569 F. App'x 193 (5th Cir. 2014)); *see also Shaw v. Ciox Health, LLC*, No. 19-cv-14778, 2020 WL 12846622, at *3 (E.D. La.

July 8, 2020). Plaintiff's EEOC charge included only allegations of racial discrimination and made no reference to the hue or pigment of her skin. Accordingly, the Court finds that Plaintiff's claim of color discrimination has not been exhausted. *See Donnelly*, 2021 WL 462052, at *3 (finding the plaintiff failed to exhaust her administrative remedy for her claim of color discrimination when "nowhere in her charge does [she] describe facts relating to the hue of pigment of her skin"); *Shaw*, 2020 WL 12846622, at *3 (same).

With regard to Plaintiff's claim of national origin discrimination, there are some contexts where claims of race discrimination and national origin discrimination "may substantially overlap or even be indistinguishable depending on the specific facts of a case." *Horne v. Tex. Dep't of Transp.*, No. 19-cv-405, 2020 WL 3498009, at *4 (E.D. Tex. June 29, 2020) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)); *see also Enriquez v. Honeywell, Inc.*, 431 F. Supp. 901, 904 (W.D. Okla. 1977) ("The line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible . . . ."). "Hence, courts will treat a race discrimination claim as a national origin discrimination claim, or vice versa, when the race and national origin may be correlated." *Horne*, 2020 WL 3498009, at *4 (citing *Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 796 (S.D. Tex. 2011)). Whether such claims overlap here is dependent on the specific facts alleged in this case. *See id.*

Title VII, nevertheless, recognizes that "race and national origin are ideologically distinct." *Sisay v. Greyhound Lines, Inc.*, 34 F. Supp. 2d 59, 64 (D.D.C. 1998) (collecting cases). Accordingly, Plaintiff's national origin claim must "reasonably arise from the administrative investigation that can reasonably be expected to follow" her EEOC charge. *See id.* (cleaned up). Plaintiff's EEOC charge makes no reference to her national origin or the national origin of any other employee. *See* Dkt. 1 at 5–8. The only basis for discrimination raised by the facts alleged in

7

her EEOC claim is race. Therefore, the Court finds that Plaintiff's claim of national origin discrimination has not been administratively exhausted. *See Sisay*, 34 F. Supp. 2d at 64 (finding the plaintiff failed to exhaust his administrative remedy when "any indication of a claim of national origin discrimination either in the form of express words or factual allegations" was "[a]bsent" from his EEOC charge).

With regard to Plaintiff's claim of age discrimination,[2] "[l]ike Title VII, the ADEA requires an individual alleging age discrimination in employment first to file a charge with the EEOC and to completely exhaust the administrative remedies available from the EEOC before filing suit in federal court." *Ball v. Target Corp.*, 18-cv-3783, 2019 WL 13273217, at * 4 (N.D. Ga. Mar. 4, 2019) (citation omitted) (internal quotation marks omitted). Accordingly, the claim of age discrimination raised in the Complaint (Dkt. 1) must be "like or related to" the allegations made in the EEOC charge. *King v. Life Sch.*, 809 F. Supp. 2d 572, 580 (N.D. Tex. 2011) (citing *Vuyanich v. Republic Nat'l Bank of Dall.*, 723 F.2d 1195, 1201 (5th Cir. 1984)). The Court can find no such similarity here, as Plaintiff's EEOC charge makes no reference to her age. Accordingly, the Court finds that Plaintiff's claim of age discrimination has not been administratively exhausted. *See King*, 809 F. Supp. 2d at 580 (finding the plaintiff failed to exhaust her administrative remedy when the facts alleged in her EEOC charge related to race and "an investigation reasonably expected to grow out of that charge would not encompass . . . age discrimination"); *Ball*, 2019 WL 13273217, at *6 (finding that "[a]bsolutely nothing in the facts set forth in the EEOC Charge alludes to [the plaintiff's] age . . . or gives rise to any indication that the allegation of discrimination in the charge was based on any characteristic except for [the plaintiff's] race"). Thus, the Court recommends

---

[2] The Complaint (Dkt. 1) identifies Title VII as the statute giving rise to all of Plaintiff's claims, including her age discrimination claim. *See* Dkt. 1 at 1. The Court notes that Title VII does not provide for age discrimination; rather, the Age Discrimination in Employment Act of 1967 ("ADEA") is the statute that provides recovery for an age discrimination claim. Accordingly, the Court construes Plaintiff's claim for age discrimination pursuant to ADEA.

that Plaintiff's claims based on color, national origin, and age be dismissed for failure to exhaust her administrative remedies.

## B.    Sufficiency of the Allegations

In the Motion (Dkt. 4), Defendant also argues that "none of the allegations in the Complaint plausibly show race or religious discrimination." Dkt. 4 at 4. Defendant argues that Plaintiff has failed to identify her own protected class, let alone that any connection between a protected classification and the alleged discriminatory conduct. *See id.* at 6–8. The Court generally agrees.

In the Complaint (Dkt. 1), Plaintiff generally alleges that she experienced the following: a "hostile work environment [and] conditions"; "discriminatory treatment and practices"; "threats and humiliation at work"; "derogatory comments regarding . . . race and religion"; "unequal treatment with peers"; "denial of promotion [and] opportunity to grow"; and "failure of the organization to mitigate after complaint was made." Dkt. 1 at 3. The Court interprets this as raising claims related to disparate treatment and hostile work environment and evaluates each in turn.

### 1.    Disparate Treatment

A plaintiff need not establish a *prima facie* case at the pleading stage; instead, to state a claim of disparate treatment, a plaintiff need only plausibly allege: "(1) an 'adverse employment action,' (2) taken against a plaintiff '***because of*** [her] protected status.'" *Cicalese v. Univ. of Tex Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (emphasis in original) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). A plaintiff must allege "facts, direct or circumstantial, that would suggest [the defendant's] actions were based on [the plaintiff's protected status] or that [the defendant] treated similarly situated employees [outside of the protected class] more favorably." *Raj*, 714 F.3d at 331.

In the present case, Plaintiff alleges that she was fired, which is sufficient to meet the first pleading requirement in a disparate treatment case. *See Hamilton v. Dallas County.*, 79 F.4th 494, 502–03 (5th Cir. 2023) ("[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." (citations omitted)). However, Plaintiff has not plausibly alleged the second requirement—that her termination occurred because of her race or religion.

First, while Plaintiff does not specifically identify her race, the Complaint (Dkt. 1) contains a plausible inference that Plaintiff is African American based on her allegation that "an African American manager warned [her] that [she] had to watch [her] back due to the racism at the hospital." *See* Dkt. 1 at 7. Even though Plaintiff has plausibly alleged that she belongs to a protected racial class, she has not alleged any facts connecting her termination to her race. *See id.* at 7–8. Suffering an adverse action alone is not enough; to constitute disparate treatment, Plaintiff must plausibly allege a causal connection between the adverse employment action and her protected status. Such a connection may be established by allegations that the action was taken because of Plaintiff's protected status or that other similarly situated employees of other protected classes were treated more favorably. *See Sanchez v. Chevron N. Am. Expl. & Prod. Co.*, No. 20-30783, 2021 WL 5513509, at *6 (5th Cir. Nov. 24, 2021). Because Plaintiff has not alleged any facts, direct or circumstantial, that suggest a causal connection between Defendant's actions and Plaintiff's race, the Court recommends that Plaintiff's claims of disparate treatment based on race be dismissed. *See Roundtree v. Raytheon*, No. 22-cv-2675, 2024 WL 1337364, at *4 (N.D. Tex. Mar. 28, 2024) (dismissing the plaintiff's claim because he failed to plead a "casual connection" between the adverse action and the protected status).

Similarly, Plaintiff alleges that she experienced discrimination based on her religion. *See* Dkt. 1 at 3. However, Plaintiff has neither identified her religion, nor has she alleged any facts from which an inference may be drawn as to her religion. Furthermore, Plaintiff makes no direct allegation that she was terminated or experienced any other adverse employment action because of her religion. Based on the facts alleged in the Complaint (Dkt. 1), the Court cannot draw any reasonable inference that the adverse employment action was taken because of Plaintiff's religion. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)). Thus, the Court recommends that Plaintiff's claim of disparate treatment based on religion be dismissed.

### 2.    Hostile Work Environment

To sufficiently allege a hostile work environment claim, the plaintiff must plead that:

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his protected status; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*E.E.O.C. v. AOD Ventures, Inc.*, No. 21-cv-418, 2022 WL 4367199, at *3 (E.D. Tex. Mar. 31, 2022) (cleaned up) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). "When a plaintiff alleges harassment by a supervisor, 'the plaintiff need only meet the first four elements of the test.'" *Id.* (quoting *Wilson v. Republic Nat'l Indus. of Tex., LP*, No. 19-cv-593, 2019 WL 3859666, at *3 (N.D. Tex. Aug. 16, 2019)).

"A workplace environment is hostile when it is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (*Alaniz v. Zamora-*

11

*Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)). Whether a work environment is "sufficiently hostile" is determined by the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez*, 670 F.3d at 651 (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Ramsey*, 286 F.3d at 268).

Here, Plaintiff has failed to allege that she experienced harassment based on her race or religion. Plaintiff alleges that she was subjected to "threats and humiliation" and "derogatory comments" based on her race and religion. Dkt. 1 at 3. Such allegations are conclusory and fail to move her claim from conceivable to plausible. *See Iqbal*, 556 U.S. at 678. At most, Plaintiff alleges a single incident where her supervisor allegedly "laughed at" Plaintiff after allegedly lying regarding a merit-based pay increase for Plaintiff. *See* Dkt. 1 at 7. While Plaintiff may have found her supervisor's reaction insulting in this instance, it is well established that Title VII does not impose a "general civility code" on employers. *See West v. City of Houston*, 960 F.3d 736, 743 (5th Cir. 2020) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)). Further, "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not amount to a hostile work environment. *Faragher*, 524 U.S. at 788 (cleaned up). Instead, the harassment must be "so severe and pervasive as to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Id.* at 786 (cleaned up) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Other than this incident, Plaintiff does not identify any other instance of intimidation, ridicule, or insult. Accordingly, this single incident of

insult fails to raise Plaintiff's conclusory allegation that there was a hostile work environment "above the speculative level." *See* Dkt. 1 at 3; *see also Raj*, 714 F.3d at 331 (quoting *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)). Thus, the Court recommends that Plaintiff's hostile work environment claims based on race and religion be dismissed.

## C.    Leave to Amend

A "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Further, a *pro se* litigant should generally be offered an opportunity to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Id.* at 768 (quoting *Bazrowx*, 136 F.3d at 1054). The Court can deny leave to amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 20-cv-948, 2021 WL 2232052, at *3 (E.D. Tex. Apr. 28, 2021), *R. & R. adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021).

In the present case, Plaintiff is proceeding *pro se*, and this is the first time that the Court has addressed the sufficiency of her allegations. The Court finds that Plaintiff could provide additional factual allegations to remedy her disparate treatment and hostile work environment claims. Specifically, Plaintiff could identify her race and her religion. Furthermore, with respect to Plaintiff's disparate treatment claim, additional factual allegations could provide the necessary causal connection between her termination and her race and/or religion to push them across the line from conceivable to plausible. Plaintiff could also include additional factual detail with respect to her hostile work environment claim based on her race and/or religion. Thus, if given the

opportunity, Plaintiff could provide additional factual allegations supporting the inference that she was terminated or subjected to a hostile work environment because of her race and religion. For these reasons, Plaintiff should be given leave to amend these claims prior to dismissal.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends that the Motion (Dkt. 4) be **GRANTED**. Plaintiff's claims based upon color, national origin, and age should be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust her administrative remedies. Plaintiff's claims for disparate treatment based on race and religion and hostile work environment based on race and religion should be **DISMISSED WITHOUT PREJUDICE**, and Plaintiff should be given leave to file an amended complaint with respect to these claims, rectifying the deficiencies identified herein, no later than fourteen (14) days after the entry of the Memorandum Adopting Report and Recommendation, if any. If Plaintiff fails to timely file an amended complaint, these claims should be dismissed with prejudice.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417

(5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 28th day of August, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE